UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FOX INDUSTRIES, INC.,
and CHARLES E. RICHARDSON,

       Plaintiff(s),

  -against-

LEONID GUROVICH, a/k/a LEO GORE,
CYNTHIA GRACEFFO, DELTA BALLS, LLC,
STR INDUSTRIES, LLC, TITON INDUSTRIES, LLC,
JOHN DOES 1-100, fictitious persons, and
XYZ CORPS. 1-100, fictitious entities,

       Defendant(s).
-------------------------------------------------------------X
LEONID GUROVICH, a/k/a LEO GORE, and
STR INDUSTRIES, LLC,

      Counter/Third Party Plaintiffs,

  -against-

FOX INDUSTRIES and CHARLES RICHARDSON,
      Counter Defendants,
and
FOX CORPORATE INVESTMENTS, LTD. and
ROBERT MANN,
      Third Party Defendants.
-------------------------------------------------------------X

**MEMORANDUM
& ORDER**
CV 03-5166 (TCP) (WDW)

**WALL, Magistrate Judge:**

  Before the court are (1) plaintiffs' letter motion to strike the answers and impose

additional sanctions on the defendants, based on a letter sent by defense attorney Simon Schwarz

to non-party Kramer Industries [245[1]]; (2) plaintiffs' motion on notice, seeking similar sanctions

along with disqualification of defense counsel, based on delivery of the same letter to two other

non-parties [269]; and (3&4) plaintiffs' motions to strike certain "Notices" entered by the

---

[1]Numbers in brackets refer to the Docket Entry number of the document.

defendants on the court docket and seeking sanctions [282 and 284].

Also before the court are (5) defendants' cross motion for a protective order [265 & 267[2]]; (6) defendants' motion for costs and fees [266]; and (7) defendants' purported cross motion pursuant to 28 U.S.C. §1927 in regard to the "Notices" issue [286], which was docketed only as opposition to plaintiffs' motion numbered 284, and never docketed as an independent motion.

For the reasons set forth herein, the plaintiffs' letter motion [245] and the plaintiffs' motion on notice [269] are both granted to the extent of imposing sanctions, albeit not all of the sanctions sought by the plaintiffs. Simon Schwarz shall pay sanctions in the amount of $1000 per letter, for a total of $3000, directly to the court for usurping the court's authority. The plaintiffs' motions to strike the defendants' "Notices" [282 & 284] and for sanctions are granted. The Clerk of the Court shall strike docket entries number 279, 280, 281 and 283. The plaintiffs are awarded costs and attorney's fees on motions number 245, 269, 282 and 284 in the amount of $4000. The court declines, at this time, to enter the other sanctions sought by the plaintiffs, that is, disqualification of Mr. Schwarz and the striking of the defendants' answers, counterclaims and defenses, for reasons set forth *infra*.

The defendants' Cross-Motion for a protective order [265 & 267] is granted in part and denied in part, with a protective order being granted as to the Quicken Loans subpoena and denied as to the other subpoenas, and the defendants are awarded $1000 in costs and fees on that motion. The defendants' Motion for Costs and Attorneys' Fees [266] is otherwise denied. The

---

[2]Although there is only one motion for a protective order, the papers in support of that motion are in two docket entries, not one.

defendants' purported cross motion for sanctions pursuant to 28 U.S.C. §1927 [286] is also denied.

## DISCUSSION

The underlying history of this litigation has been set forth repeatedly in the many orders that have issued from the undersigned and Judge Platt and it will be repeated here only as necessary. The trigger for the instant spate of motions was three subpoenas served by the plaintiffs on three non-parties - Kramer Industries, Inc., Great Lakes Industries, Inc., and Quicken Loans, Inc. - and simultaneously served on defense counsel Simon Schwarz on February 14, 2006. Soon thereafter, according to plaintiffs' counsel, Michael Saffer, he received a phone call from Kramer's principal advising him that Kramer had received a letter from Schwarz "directing Kramer **not** to comply with the Subpoena." [245:3/3/06 Saffer Ltr. at 2](emphasis in original). Saffer asserts that he was not served with a copy of the letter from Schwarz to Kramer, and would not have known about it if not for the Kramer principal's phone call. *Id.* The same letter was sent to the two other subpoenaed non-parties, Quicken Loans, Inc. and Great Lakes Industries, Inc. [267:Schwarz Aff. ¶13] Schwarz adamantly maintains that he faxed Saffer copies of all three letters on the same day he sent them to the non-parties, February 21, 2006. *See id.*; *see also* [267:Otto Decl. ¶8].

The Schwarz letter to Kramer[3] stated that the subpoena "appears to be a wholesale fishing expedition for unknown information that is not reasonably calculated to reveal any information

_____

[3]The three letters have some differences, tailored to the recipients, but are identical in the directives not to respond that are the subject of this Order.

3

relevant, material or necessary to the issues in the cited case, that has any bearing thereon or that can serve as the basis for discovery of any documents or other alleged evidence in this matter." [245: Ex. B, p.2]  The letter, dated February 21, 2006, a week after service of the subpoenas, asserted that the defendants would "immediately" move to quash the subpoena and seek sanctions against the plaintiffs, and that the defendants "ask that you respectfully **not produce** any such documents sought by Fox and Richardson until such time as the Gurovichs have had the opportunity to challenge and quash the above referenced subpoena." *Id.* (emphasis in original). The letter did not, however, merely "ask" the recipients not to respond; it also announced, in bold print, that due to alleged service flaws, "**the subpoena is null and void as a matter of law and should not be complied with.**" *Id.* (emphasis in original).

The letter continued, stating that the defendants had not received the requisite notice of service of the subpoenas, and that the subpoena was defective on jurisdictional grounds, concluding, again using bold print, that "the subpoena served on you is null and void as a matter of law and you **may not comply with this illicit subpoena not personally served on you by a person at least 18 years old but sent to you instead by fed-ex to a place in NJ more than 100 miles from that federal district, issued by the United States District Court in Suffolk County, New York instead of a local court of general jurisdiction without prior notice to the parties** which are the subject of the subpoenas.  Please conduct yourselves accordingly." *Id.* at 2-3 (emphasis in original).

The letters apparently worked.  None of the non-parties have responded to the subpoenas. Although Quicken Loans had sent out documents responsive to the subpoena by UPS, Quicken intercepted the delivery of those documents after both Schwarz, in his letter, and Mr. Gurovich,

in emails, demanded that they do so. [267:Schwarz Aff. ¶12 & Ex. 4; Otto Decl. ¶¶7 &8]  The

many motions now before the court followed.

### The plaintiffs' letter motion[245] and defendants' motions [256, 265, 266 & 267]

On March 3, the plaintiffs served their letter motion, asking that the defendants' answer

be stricken, their defenses suppressed, a sanction imposed on Schwarz, and fees and costs be

awarded, based on the letter from Schwarz to Kramer Industries. [245]  As of that date, the

defendants had not moved to quash the subpoenas or otherwise contacted the court about them,

despite Schwarz's claim ten days earlier to the non-parties that they would "immediately" move

to quash.  On March 7, the defendants moved for an extension of time to oppose the plaintiffs'

motion and to cross move.  [248]  The motion was granted, and the defendants were directed to

serve and file opposition, along with any cross motion, by March 17, 2006.  On March 17, the

defendants filed not their opposition and cross motion, but a second motion seeking an extension

of time. [254]  The court did not immediately rule on the motion, awaiting opposition from the

plaintiffs, which was filed on March 20.  Also on March 20,  without having gotten a ruling on

their second motion for an extension of time, the defendants filed opposition to the plaintiffs'

motion and a cross motion for a protective order. [256]  On March 21, those papers were rejected

by the undersigned as untimely and not in compliance with the Individual Rules. [257]  The

plaintiffs' motion was thus, as of that date, unopposed.

The defendants moved for reconsideration of the rejection of their opposition papers and

cross motion. [261]  That motion was denied by Order dated April 12, but the court, mindful of

the seriousness of the issues at hand, granted the defendants the opportunity to file opposition

and a cross motion no later than May 3, 2006, by 5:00 p.m.  [263 at 4-5]  The admonition that all

papers must be filed by 5:00 p.m. on May 3rd was set forth in all caps and bold print in the Order. Moreover, Mr. Schwarz was advised that he should "address the question of why the court should not, at the least, order his withdrawal and/or disqualification from the case, based not only on the letters sent to the non-parties regarding the February 14 subpoenas, but the effect on this litigation of his cumulative behavior during the prosecution of this lawsuit." [263 at 5]

At 4:55 p.m. on May 3, the defendants filed papers described in the docket entry as "RESPONSE in Opposition re 245 Letter MOTION . . . and Cross Motion for Protective Order including Notice of Cross-Motion, Affirmations of Simon Schwarz, Esq., Theresa Otto and Cynthia Greceffo in Support, and Memorandum of Law." [265] Despite that description, the filing consisted only of declarations from Theresa Otto and Cindy Graceffo [265-1], designated as the "Main Document;" a second set of the Otto and Graceffo Declarations [265-2]; 35 pages of exhibits [265-3]; and an additional two page exhibit [265-4]. There was no opposing letter from Schwarz, no affirmation from Schwarz, and no memorandum of law in opposition. Nor were there any notice of motion or other papers in support of the purported cross motion. Those papers were docketed instead at 8:01 p.m. on May 3, past the deadline imposed by the court. [267] They consisted of a Notice of Motion for a Protective Order [267 pp.1-4]; an affirmation from Mr. Schwarz [267 pp.5-20]; a Memorandum of Law [267 pp.21-50]; the Otto Declaration [267 pp.51-55]; and the Gracefo Declaration [267 pp.55 ff.]. In an order dated May 5, 2006, the court noted the untimeliness of the filings, but once again gave the defendants the benefit of the doubt, and accepted the papers in opposition and in support of the cross motion, still "mindful of the seriousness of the issues." [268 at 1]

Also filed on May 3 at 8:01 p.m. was the defendants' "Notice of Motion for Costs and

6

Attorney Fees as Prevailing Party on Motion for Sanctions and An Award of Attorney Fees and Costs and Sanctions for Discovery Abuse and Misconduct." [266]  In the May 5 Order, the court termed this motion as "timely filed."  Closer inspection of the costs and fees motion papers reveals them to be, in large part, additional argument in opposition to the plaintiffs' motions and/or in support of the cross motion.  The substance of the motion for fees and costs is directly related to the subpoenas, and the defendants could and should have included this line of argument in the other papers.  The court surmises that the additional motion was made to avoid the undersigned's rule that briefs cannot exceed 25 pages.  Nonetheless, the court will consider the motion, having suggested in the earlier order that it was properly before the court.

The court will address the substance of these motions *infra*.

### Filing of the Defendants' "Notices"and the Plaintiffs' Motion on Notice [269] and Motions to Strike the "Notices"[282 & 284]

On May 12, 2006, the plaintiffs filed a motion on notice, asking that the defendants' answers, the counterclaims, and the third party complaint be stricken, and their defenses suppressed; that a "significant monetary sanction" be imposed on the defendants and their counsel, Simon Schwarz, for their wrongful interference with the subpoena process; that Schwarz be disqualified from representing the defendants in this action; and that the plaintiffs be awarded their fees and costs on the motion. [269]  This motion was allegedly[4] made after the plaintiffs learned that the same letter that was sent to Kramer Industries was also sent to the two other non-parties who received subpoenas - Quicken Loans and Great Lakes Industries.  That same day, the court issued an order setting forth a briefing schedule for the plaintiffs' motion on notice.  The

---

[4]The defendants claim that Saffer knew about all three letters as of February 21, 2006, the day they were sent. Saffer denies this.  This issue is discussed at length *infra*.

defendants were directed to file their opposition papers no later than 5:00 p.m on May 26.  They filed them on May 26 at 4:49 p.m. [274].  The plaintiffs were directed to file their reply papers no later than 5:00 p.m. on June 2.  They filed them on June 2 at 1:15 p.m.

On June 7, the defendants moved to strike the reply papers, on the ground that the Saffer affidavit's length violated the undersigned's Individual Rules regarding the length of reply briefs. [277] That motion was denied on June 8, 2006.

Also on June 8, the defendants filed a series of "Notices," docketed as having been filed in regard to docket entry number 275, which is the plaintiffs' reply to the defendants' opposition to their motion number 269.  These "Notices," entered on the docket as numbers 279, 280, and 281, purport to bring to the court's attention certain documents that, for reasons Mr. Schwarz does not understand, do not appear on the docket.  He submitted them, he states, in order to "supplement[] the previous discovery motions, cross-motions and orders on file with the Court." [279 at 2]   One of the "Notices" [281] also purports to be a cross motion.  On June 9, 2006, the plaintiffs moved to strike the Notices and for fees and costs on the motion. [282] The defendants opposed that motion on June 12.  [285] On that same day, the defendants filed yet another Notice [283], and the plaintiffs moved to strike that Notice as well [284], again seeking fees and costs. On June 14, the defendants filed papers in opposition to motion number 284, and purported to make a cross motion for sanctions pursuant 28 U.S.C. §1927, but the cross motion was not docketed as a motion. [*See* 286]  The plaintiffs opposed the purported cross motion on June 15. [287]

The court finds that the defendants' "Notices" are unauthorized sur-replies to the plaintiffs' motions, and they will be stricken.  The defendants apparently examined the docket

belatedly to determine whether certain documents had been filed, and, not finding them, chose this creative but inappropriate method for placing them on the docket and calling them to the court's attention.  It is counsel's responsibility to make sure that documents he thought he had docketed actually appear on the docket.  The court will not accept the filings in regard to these pending motions and directs the Clerk of the Court to strike them, thus granting plaintiffs' motions numbered 282 & 284.  The court also awards the plaintiffs fees and costs for those motions.  The defendants are advised to call the ECF help desk to determine how the documents attached to the Notices can properly be added to the docket, if at all.  Further, the defendants' purported cross motion [286] is denied.

The court now turns to the substance of the remaining motions, which, boiled down to their essence, ask the court to impose the harshest possible sanctions on the defendants and their attorney, or, from the defendants' perspective, to grant a protective order and to impose various serious sanctions on the plaintiffs.  The event giving rise to all of these motions was the letter sent by Simon Schwarz to the non-parties who received subpoenas from the plaintiffs in February 2006.  The court views the letter sent by Schwarz and the alleged defects in the subpoenas and the defendants' motion for a protective order as entirely distinct issues and will address them separately.

### Schwarz's Letters to the Non-Parties and Related Issues

Before addressing the substance of Schwarz's letter, the court must digress to a side issue argued at such length by the parties[5] that it has taken on a life of its own, threatening to obscure

---

[5]The court notes that in its Order of April 12, 2006 [263], it directed the parties to address the issue, unaware of the digression that would ensue.

the real issues at hand.  The court refers to the question of whether or not Schwarz faxed copies

of the letters to Saffer on February 21, the same day Schwarz faxed them to the non-parties.  In

his March 3 letter motion, Saffer claims that he first learned of the letter to Kramer Industries

when the principal at Kramer sent it to him and that Schwarz had not copied Saffer on the letters,

instead "**secretly directing**" Kramer not to comply with the subpoena. [245 at 2]

Schwarz denies this, and claims that copies of all three letters to non-parties were faxed to

Saffer's firm on February 21.  In support of this claim, Schwarz has submitted the declaration of

Theresa Otto, his office manager.  Ms. Otto states that she faxed copies of the three letters to the

Saffer firm at about 10:38 a.m. on February 21, the same day she faxed them to the non-parties.

[267:Otto Decl. ¶8]  In support of this claim, the defendants have submitted a document that

appears to be a combination of two separate documents. [267, Ex.3]  The top of the page is a

"Confirmation Report" and the bottom of the page is a minimized copy of a Facsimile

Transmittal Sheet.  Together, the two documents reflect the transmission to Michael Saffer of

nine pages, called "Letters to Quicken Loans, Lakeside Industries[6] and Kramer Industries," at

973-736-4670 at 10:38 a.m. on February 21, 2006.

Saffer denies this, reiterating that "all credible evidence undermines [Schwarz's] claim"

that the letters were faxed. [269: Saffer Aff. ¶24] To refute Otto's evidence of faxing, the

plaintiffs have submitted an Affirmation from Robin Karpel, the Director of the Human

Resources Department at Saffer's law firm.  Ms. Karpel states that the firm maintains a daily,

computerized log of all incoming and outgoing faxes to the firm.  She annexes, as Exhibit A to

her affirmation, a copy of the firm's "daily log of faxes for [February 21, 2006] for fax number

---

[6]The subpoena was to "Great Lakes Industries," not Lakeside Industries.

973-739-4670. [269: Karpel Aff. ¶4 & Ex. A]  That document does not reflect the receipt of any transmissions from Schwarz's fax number, 212-202-7985.  It does reflect, however, that at 10:37, 10:39, and 10:41 there were  unsuccessful[7] attempted transmissions from unknown numbers. Moreover, it reflects that at 10:43 and 10:58, there were successful transmissions from numbers that do not appear on the Activity Report sheet.  Neither of those transmissions consisted of nine pages, however.

In refutation of Ms. Karpel's evidence, Ms. Otto, in her Reply Declaration, asserts that she knows that "computerized log entries can be changed or deleted without detection as fast and as easy as it is to switch a peanut butter sandwich for a tuna sandwich in a diner or food kitchen." [272: Otto Reply Decl. ¶10] She then states that it is "entirely conceivable that Ms. Karpel . . . was asked to print a computerized log in which the damaging incoming fax entry, proving that [Ms. Otto] was telling the truth and confirming the fax receipt, was deleted by Mr. Saffer himself or at Mr. Saffer's direction."  *Id.*  In short, she concludes, "Ms. Karpel's Affirmation proves nothing."  *Id.*

In addition to the Karpel affidavit, Mr. Saffer points out other facts in support of his claim that Schwarz never faxed copies of the letter to him. He states, for example, that it has been Schwarz's "pattern of omission" in the past not to serve Saffer with "copies of his work product relating to subpoenas," and that such a pattern is "powerful evidence in establishing that he never" faxed the letters.  [269: Saffer Aff. ¶24]  Next, he points out that although correspondence sent to a third party typically has a "cc" naming other recipients, the letters to the subpoenaed

---

[7]The court assumes that the "NG" notation reflects a failed transmission.  The plaintiffs have not explained this.

non-parties do not indicate service on Saffer with a "cc." *Id.* ¶26. He further argues that although he raised the allegation of Schwarz's failure to serve Saffer with the Kramer letter in a letter to Schwarz dated February 28, 2006, Schwarz did not, in his March 3 response, claim that he had faxed the letters. *Id.* ¶27. Nor did Schwarz refer to the other letters to Great Lakes and Quicken, although Saffer mentioned only the Kramer letter. *Id.* ¶28. "One would think," Saffer writes, that the mention of "only the Kramer subpoena in my letter would have spurred Mr. Schwarz, if he wanted me to know about all his letters . . . to mention his letters to Quicken and Great Lakes." *Id.* Saffer concludes that "the only reasonable conclusion to draw from these circumstances is that Mr. Schwarz never served my firm with copies of his letters to Kramer, Great Lakes and Quicken." *Id.*¶29.

The points raised by Saffer - along with the fact that the plaintiffs' first motion regarding the subpoenas, served after Schwarz purportedly faxed copies of all three letters to Saffer, addressed only the Kramer subpoena - do support a finding that the letters were not faxed, or at least that Saffer did not know about them, but such a conclusion is not the <u>only</u> one to be drawn.

Schwarz challenges Saffer's claim that although Saffer learned of the Kramer letter in mid-February, he did not learn that similar letters had also been sent to the other non-parties until sometime in March. [*See* 267:Schwarz Aff. ¶17 citing the 3/20/06 Saffer Letter]. The defendants claim that not only did Otto fax copies of the letters to Saffer on February 21, but that Quicken, on February 22, 2006, also faxed him a letter that referenced Schwarz's letter to Quicken. *Id.* ¶19. In support of this claim, Schwarz attaches a copy of a letter from George Popofski, a paralegal at Quicken Loans, to Michael Saffer, dated February 22, 2006, indicating that it had been sent by fax to 973-325-4670. [267:Schwarz Aff. Ex. 4] The letter informs Saffer that after

12

receiving the subpoena, Quicken got a letter from Schwarz objecting to the release of documents and that Quicken thus would not release the documents. *Id.* Saffer denies having received the letter, stating that the fax number to which it was directed "is not a fax number for [his] firm." [269:Saffer Aff. ¶30] There is no sworn statement from Popofski stating that he did indeed fax the letter to Saffer and had reason to believe it was received.

In a declaration electronically docketed without a signature (no signed hard copy was ever delivered to the undersigned), Ms. Otto refutes Mr. Saffer's claim about the fax number[8]. Ms. Otto states that the fax number to which the Quicken letter was directed - 973-325-4670 - appears on Saffer's firm's letterhead in its cover letter to Quicken attaching the subpoena. [272:Otto Reply Decl. ¶22] She is correct. It does appear as a fax number of the firm on that letter and on a letter to the court dated March 20, 2006, as well as on other documents listed by Ms. Otto. In his Reply Affirmation on the motion for sanctions pursuant to Rule 37 [276], Saffer does not address or explain this discrepancy, and his silence leaves the court unable to resolve the issue on the record before it.

Ms. Otto also states that she was "told by Quicken personnel that Sandy Forte [Saffer's secretary] and others from Mr. Saffer's firm was [sic] busy on the phone all day Wednesday, February 15, 2006 before the undersigned even had an opportunity to find out about the Subpoenas, and all day Thursday and Friday, demanding that the non-parties must turn over the requested records right away and implying that Quicken did not need any negative publicity from

---

[8]It is entirely unclear to the court why Ms. Otto, and not Mr. Schwarz, would be addressing this claim.

being dragged into the case by not giving over any records." Otto Decl. ¶5.[9] Sandy Forte absolutely denies the allegation that she contacted Quicken to force compliance with the subpoenas, flatly stating that the conversation with Quicken employees alleged by Ms. Otto never occurred. [269 Forte Aff. ¶2] "I have never spoken to anyone at Quicken, let alone ever demanded the requested records be turned over right away. In my twenty years as a legal secretary I have never threatened anyone in the manner alleged by Ms. Otto." *Id.* ¶4.

Ms. Otto, in her unsigned Reply Declaration, addresses Ms. Forte's denial, stating that "except for one minor quibble over words," she "stands by every word" in her earlier declaration, including, apparently, her claim that Sandy Forte had called Quicken personnel to urge prompt compliance with the subpoenas. [272:Otto Reply Decl. ¶4] Ms. Otto reports that the unnamed people at Quicken to whom she spoke were "certain that they received several different phone calls from Mr. Saffer's law firm demanding that the non-parties must turn over the requested records right away. They were less certain as to the names of the callers except that at least one came from a female caller and that they thought it was the lady who sent the subpoenas. That is why I wrote 'Sandy Forte and others from Mr. Saffer's firm.'" *Id.* ¶6. Ms. Otto ventured a guess that perhaps the caller was Arla Cahill, an attorney at the Saffer firm working on this litigation. *Id.* Or maybe it was "someone else from the law firm." *Id.* In any event, Ms. Otto concludes, "one thing is clear: **people from Mr. Saffer's firm** were busy on the phone all day Wednesday, February 15, 2006, while Mr. Schwarz and Mr. Saffer were at a deposition of Mr. Charles

---

[9]This is a curious statement. Ms. Otto twice refers to herself as "the undersigned counsel," but, as far as the court knows, Ms. Otto is an office manager and not an attorney. Apparently, these passages were imported from Mr. Schwarz's affidavit directly to Ms. Otto's.

Richardson in East Islip[10], New York, deceptively making no mention of the subpoenas to Mr. Schwarz," . . . . *Id.* (bold in original).

Despite Ms. Otto's assertion that "one thing is clear," the validity of her allegation is anything but clear to the court. Apparently, what Ms. Otto is saying is that her explicit accusation of Ms. Forte was merely a "minor quibble over words," because what she really meant was that some female at Saffer's firm had called Quicken, and it is a "mere quibble" as to what female it was. Forte, Cahill - who cares? As noted earlier, there is no sworn statement from anyone at Quicken to substantiate the hearsay claims made by Ms. Otto.

The court will not even attempt to resolve these issues, in which someone is lying outright, because, although the court requested argument on whether the Schwarz letters were indeed faxed to Saffer on they day they were sent to the non-parties, that issue and the related issues raised by the defendants have become smoke screens obscuring the gravamen of the true issue before the court - the content of the letters sent by Schwarz to the non-parties and whether his transmissions are sanctionable. To pursue the extraneous issues would require lengthy hearings that would simply waste more of the court's time. The court has gone into such detail about them to illustrate the morass in which this litigation is mired, a morass from which the court will make every effort to extricate this lawsuit.

First, the court finds that the letters sent by Schwarz to the non-parties are sanctionable, whether they were faxed to Saffer or not. In the letters, Schwarz tells the subpoenaed parties that the subpoenas are null and void as a matter of law and that the recipients "**may not comply with**

---

[10]The depositions were actually at the courthouse in Central Islip, New York, not East Islip.

**[the] illicit subpoenas . . . "** It is the court's duty to rule on the validity of subpoenas and to direct the recipients to comply or not comply, not the attorney's, and Mr. Schwarz has, simply put, usurped the authority of the court. Although Schwarz claimed on February 21 that he would make a motion to quash "immediately," he did not do so; instead, he took matters into his own hands and <u>directed</u> the non-parties not to respond, based on the law according to Simon Schwarz - his ruling that the subpoena was "null and void." Indeed, his directive to the subpoenaed non-parties was so persuasive that none of them has yet responded to the subpoenas, although the return date is long past. [269 at 13n.1] The court will not tolerate such behavior.

In defense of the letters, Schwarz claims that he merely "pointed out in detail the lack of compliance by Fox with the service requirement of FRCP 45(b)(1), the prior notice requirement of FRCP 45(b)(1) and the 100 mile requirement of FRCP 45(b)(2) and pointed out that, in [his] opinion, "the subpoena is null and void as a matter of law and should not be complied with." [267:Schwarz Aff.¶¶14 & 20]. It is not Schwarz's job to pass judgment on whether the subpoenas complied with Rule 45's requirements, and he did not label his pronouncement that the subpoenas were null and void as being "his opinion." Instead, he announced, in bold print, that "**the subpoena is null and void as a matter of law and should not be complied with.**" *Id.*, Ex. 2. He repeated this ultimatum later in the letter, announcing to the recipients that because the subpoenas were null and void, they "**may not comply with this illicit subpoena . . .**" *Id.* (bold in original). Inexplicably, Schwarz argues that Fox has "twisted" the Schwarz letter to Kramer "beyond recognition, insisting that [the letter] directed Kramer not to comply with a subpoena issued despite its explicit statement to the contrary." *Id.* ¶15. How Schwarz

discerns in his letters some "explicit statement" that is "contrary" to his explicit direction to the non-parties not to respond to the subpoenas is beyond the court's comprehension.

The court finds that the letters constituted an abuse of process, and imposes sanctions on that ground. An abuse of process claim has three elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective that is outside the legitimate ends of the process. *See Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir. 1994) (citing *Curiano v. Suozzi,* 63 N.Y.2d 113, 116 (1984)) (additional citations omitted). The court finds that the letters to the non-parties directing them not to comply with the subpoenas, which are "regularly issued process," demonstrate an intent to do harm without justification or excuse, and to obtain a collateral objective outside the legitimate ends of the process, that collateral objective being the usurpation of the court's authority.

This is not the first time the court has found the defendants and Schwarz guilty of abuse of process. *See* 9/1/05 Order [193] Indeed, the undersigned found the earlier event to be "as outrageous an abuse of process as I have seen since I have been [on the bench]." [193 at 7] Schwarz, who deems the undersigned's earlier ruling "irrational[]" (Schwarz Aff. in Supp. ¶22), apparently was not deterred by the ruling or the $7000 fine ($500 per subpoena) that was imposed.

The current sanctions are imposed not only on the ground of abuse of process, but also pursuant to the inherent power of the court to manage its affairs. The Second Circuit has recognized that "federal courts have 'well-acknowledged inherent power to levy sanctions in

response to abusive litigation practices.'" *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 135-36 (2d Cir. 1998) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980)). Generally, courts have required a finding of bad faith for the imposition of sanctions under the inherent power doctrine. *Id.* at 136 (citing *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991)).

The Second Circuit has also upheld the imposition of sanctions under the inherent power of the court where there is no finding of bad faith. *See United States v. Seltzer,* 227 F.3d 36 (2d Cir. 2000). The Court in *Seltzer* distinguished between sanctions for conduct that is "integrally related to the attorney's role as an advocate for his or her client," which require a finding of bad faith, and actions undertaken not on behalf of the client per se, but involving "a lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court." *Id.* at 40-41 (categorizing a lawyer's failure to timely return to the courtroom as an example of the latter type of conduct, not requiring a finding of bad faith for the imposition of sanctions). Schwarz's conduct here, which is an example of the excess of zealous advocacy that seems to be the hallmark of his style of representation, falls into the first category, and does require a finding of bad faith to support the imposition of sanctions. *Seltzer,* 227 F.3d at 40 (bad faith required when court sanctions attorney "by reason of excesses in conduct of the sort that is normally part of the attorney's legitimate efforts at zealous advocacy for the client.")

In this regard, the court finds that Schwarz's letters to the non-parties directing them not to respond to the subpoenas are "clear evidence" of his bad faith and vexatious behavior, evincing a deliberate effort to usurp the authority of the court. *See DLC Mgmt.*, 163 F.3d at 136.

(Bad faith must be shown by, *inter alia,* "clear evidence.")(citing *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991)).  Indeed, as in *DLC Management*, the record here "reflects a pattern of behavior which could reasonably be construed as a bad faith effort to thwart" the litigation process, especially in regard to non-party subpoenas. *DLC Mgmt.,* 163 F.3d at 136; *and see* 9/1/05 Order [#193].

The plaintiffs also argue that, considering the letters as objections to discovery, sanctions are warranted under Federal Rule 26(g)(2)(B) & 26 (g)(3), because such objections were interposed for the improper purpose of usurpation of judicial authority, and the court may impose an "appropriate sanction," including, but not limited to, "the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." Fed. R. Civ. P. 26(g)(3). Mr. Schwarz argues that the letters are not, strictly speaking, objections, correctly stating that only the recipient of a subpoena has standing to "object" to it and thus, Rule 26 does not apply. The court will not base the imposition of sanctions on Rule 26.

Nor will it base the sanctions on Rule 37.  Although the court agrees with the plaintiff's general argument that the court's findings and ruling in the Order of September 1, 2005 [193] plainly warned Schwarz against any further violations of the procedures applying to the subpoena process, there was no specific order in place that Schwarz's letters violated.  Thus, the court will not base the sanctions on a violation of Rule 37, and limits its grounds for the sanctions to abuse of process and inherent power of the court.

A sanction of $1000 per letter is imposed.  Mr. Schwarz shall personally pay the monetary sanctions to the court for those transgressions.  The defendants shall also pay the

plaintiffs' reasonable costs and attorneys' fees associated with their letter motion, docketed as number 245, and their motion on notice, docketed as number 269. The plaintiffs were the prevailing parties on those motions, inasmuch as the court agreed that the letters were violations deserving monetary sanctions. The court will not, however, disqualify Schwarz, nor will it recommend the striking of the answers or third party claims, although those sanctions were seriously considered. The reason for this forbearance is the court's conviction that the only way to stop the waste of judicial resources that this lawsuit has involved is to finish discovery as quickly as possible and to have the case go to trial, where a jury can assess the truthfulness of the parties and find accordingly. To that end, the court turns to the outstanding discovery issues, starting with the defendants' motion for a protective order.

## The Cross Motion for a Protective Order

The defendants have moved for a protective order and/or to quash all three subpoenas, on various grounds. First, they argue that the subpoenas did not comply with the service requirements of Rule 45. To the extent that they object to the service on the non-parties, there is no standing; such objection is not theirs to make. A party "ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Nova Products, Inc. v. Kisma Video, Inc.,* 220 F.R.D. 238, 241 (S.D.N.Y. 2004)(citing *Carrion v. City of New York,* 2002 WL 523398, *1 n.1 (S.D.N.Y. Apr. 8, 2002) (additional citations omitted). The defendants here have no personal interest in the service of the subpoenas.

The defendants do have standing, however, to raise the issue of whether Rule 45's requirement that parties be given "prior notice" of subpoenas duces tecum that another party

20

plans to serve on non-parties was violated here. It was. Rule 45(b)(1) requires a party issuing a

subpoena for the production of documents to a non-party to "provide prior notice to all parties to

the litigation." *Murphy v. Board of Educ.*, 196 F.R.D. 220, 222 (W.D.N.Y. 2000)(citations

omitted). "The requirement of prior notice has been interpreted to require that notice be given

prior to the issuance of the subpoena, not prior to its return date." *Id.* (citations omitted). Here,

the plaintiffs served the defendants with the subpoenas on the same date they served the non-

parties[11]. This does not comply with Rule 45's prior notice requirement.

Some courts have quashed subpoenas where the prior notice rule was not observed. *See,

e.g., Murphy,* 196 F.R.D. at 27-28 (quashing subpoenas and sanctioning attorney for repeated

violations of the "prior notice" rule where attorney had neither given prior notice nor served

copies of the subpoenas on the parties simultaneously with service on the non-parties, and

documents in response to some subpoenas were received before the other side even knew of the

subpoenas' existence); *Cootes Drive LLC v. Internet Law Library, Inc.,* 2002 U.S. Dist. LEXIS

4529 (S.D.N.Y. Mar. 18, 2002) (quashing subpoenas solely on basis of failure to provide prior

notice, and imposing strict rules for issuance of future subpoenas, but not imposing monetary

sanctions).

Another court, although recognizing the requirement in Rule 45 that prior notice be given,

upheld a magistrate judge's ruling that the absence of prior notice should not serve as a basis for

quashing the subpoenas at issue. *See Seewald v. IIS Intelligent Information Sys., Ltd.,* 1996 U.S.

---

[11]If Schwarz did not review the subpoenas until February 21, the delay was the result of
Schwarz's not going into his office for a few days. His office was aware of them on the day they
were served. *See* Otto Decl. ¶¶4 & 5.

Dist. LEXIS 22497 (E.D.N.Y. Oct. 16, 1996). The court reasoned that "the plaintiffs' failure to provide [prior] notice does not here require preclusion of the document discovery approved by the [magistrate's] order. Defendants learned of the document request . . . prior to the production of the documents, and thus, were not prejudiced by the lack of notice." *Id.* at *14. As in *Seewald*, the defendants here were not prejudiced by the lack of prior notice inasmuch as the documents were not produced before (1) Schwarz took matters into his own hands and directed the parties not to produce them, and (2) the motion for a protective order was made. The court will thus not quash the subpoenas or grant a protective order on this ground.

This ruling is issued in the context of all that has gone on in this case and the discovery still to come, and the court in no way suggests that the prior notice requirement is not important. It is. As the Advisory Committee Notes to Rule 45(b) explain, " the purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things . . . When production is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced." Advisory Committee note to 1991 Amendment, subdivision (b). The prior notice requirement going forward will be taken care of by the discovery requirements set forth *infra* in this order.

The defendants advance additional grounds for the grant of a protective order. As a threshold issue, the court notes the defendants' repeated and perplexing accusation that because the subpoenas direct that the documents should be produced at Saffer's law firm in New Jersey and Saffer's cover letter states that no appearance was required, the cover letter was deceptive

and misleading. [*See, e.g.* 267:Schwarz Aff.¶¶5 & 6; Otto Decl. ¶5].  The court cannot imagine how the explanation that no appearance is necessary when complying with a subpoena that seeks only documents could possibly be evidence of deceit, and any argument on that ground is rejected.

The same is true of the defendants' argument based on a theory that the Great Lakes and Kramer subpoenas were "meaningless decoys to cover up the Quicken subpoena," which Schwarz argues was designed for the purpose of snooping on the Guroviches' personal affairs and getting Cynthia Graceffo fired. [267:Schwarz Aff.¶¶ 9& 10; Mem. in Supp. at 13-16]  The Great Lakes and Kramer subpoenas seek information relevant to the lawsuit, and there is no basis whatsoever for thinking that they were designed for any other purpose.  Schwarz himself implicitly concedes this, when he states that the defendants do not seek to quash these subpoenas on substantive grounds, "but only for failing to comply with the procedural service requirements of Rule 45."  As noted earlier, the defendants lack standing to object to any flaws in the service of those subpoenas.  The Great Lakes and Kramer subpoenas are thus not quashed.  A separate order as to those two subpoenas will issue.

That leaves the Quicken subpoena, which seeks "documents of any kind and nature whatsoever that relate to, concern, touch upon, and/or mention, to any extent," loans provided by Quicken to Leonid Gurovich, Cynthia Graceffo and other versions of their names in various combinations, information given by Quicken to the Guroviches, communications between Quicken and the Guroviches, and the payment history of the Guroviches on "a promissory note in connection with a loan involving certain real property . . ." [245, Ex. A]  The defendants argue

that the documents sought are not relevant to the action and invade the Guroviches' privacy.

The court looks first to whether the defendants have standing to object to the production of documents owned by Quicken. A party "ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Nova Products, Inc. v. Kisma Video, Inc.,* 220 F.R.D. 238, 241 (S.D.N.Y. 2004)(citing *Carrion v. City of New York,* 2002 WL 523398, *1 n.1 (S.D.N.Y. Apr. 8, 2002) (additional citations omitted). Here, Gurovich and Graceffo assert a personal privilege or right with respect to Quicken's records concerning a mortgage on their private residence. Courts have found that a party whose banking records are subpoenaed has standing to oppose the subpoena, and the court finds that the mortgage records are sufficiently analogous to confer standing for the purpose of this motion. *See DirecTV, Inc. v. Richards,* 2005 WL 1514187, *1 (D.N.J. June 27, 2005)(citing *Catskill Dev't, L.L.C. v. Park Place Entertainment Corp.,* 206 F.R.D. 78, 93 (S.D.N.Y. 2002).

The defendants argue that documents sought in the Quicken subpoena relate only to private matters, and that they are not themselves relevant to this lawsuit, nor likely to lead to relevant information. [*See generally* 267:Defs. Mem. in Supp. at 11-19] The plaintiffs allege that at the time he applied for his mortgage with Quicken, Gore stated that he was employed by Fox, but that he had ceased to be so employed several months earlier. [270: Pl's Reply Mem. at 10; 269:Richardson Aff. ¶10] If true, the mortgage application might serve as a possible basis for attacking Gurovich's credibility, but the court does not see what other relevance the papers might have to this lawsuit, and the plaintiffs have suggested none. Given the potentially irrelevant personal information that may well be in the documents, the court will grant a protective order as

to the Quicken subpoena. The plaintiffs may, if they wish, renew their request to serve this subpoena in the discovery lists discussed *infra*. The cross motion for a protective order is thus granted in part and denied in part, and the defendants will be awarded reasonable fees and costs on that motion.

### The Defendants' Motion for Fees and Costs [266] and Purported Cross-Motion Pursuant To 28 U.S.C. §1927 [286]

The court has reviewed the defendants' two motions for costs, fees and sanctions and finds them to be without merit. As noted earlier, the defendants are awarded reasonable fees and costs (see *infra*) on the cross motion for a protective order, because that motion was granted to the extent of quashing the Quicken subpoena. No additional costs, fees or sanctions are warranted.

The purported motion pursuant to 28 U.S.C. §1927 was not, as noted earlier, ever docketed as a motion, but the court has considered it, and, having considered it, denies it. If an attorney in this action has unreasonably or vexatiously multiplied the proceedings so as to cause excessive costs, that attorney is not Mr. Saffer.

### Attorney's Fees and Costs

The court has awarded reasonable costs and attorney's fees to the plaintiffs on their motions numbered 245, 269, 282 and 284, the plaintiffs having been successful in obtaining rulings that 91) the letters to the non-parties are sanctionable and (2) the "Notices" must be stricken. The defendant has been awarded reasonable fees and costs on its cross motion for a protective order, having been successful regarding the Quicken subpoena. The court will award the plaintiffs $4000 in fees and costs, and will award the defendants $1000 in fees and costs.

## **Discovery Going Forward**

The parties shall simultaneously submit a statement of the discovery that they believe remains to be conducted and why it is needed[12]. This list shall include, *inter alia*, drafts of any non-party subpoenas that are anticipated, with an explanation of why the documents or information sought is discoverable. The parties must also include in their discovery lists a statement of whether an expert will be used at trial. **These lists may not exceed three pages, and must be electronically filed no later than 5:00 p.m. on October 30, 2006.** This deadline takes into account all upcoming holidays and it will not be extended. Failure to adhere to this deadline will result in the undersigned's finding that the party who has not complied waives any additional discovery. The attorneys are further directed to abstain from any personal attack on their adversaries or their adversaries' counsel in their submissions and to avoid at all costs histrionic pronouncements on the various perfidies of the other side. The list, in other words, must be a straightforward statement of the discovery sought, including any non-party subpoenas, and the reasons such discovery is needed. Failure to adhere to this directive will result in the rejection of the list and a finding that the offending party has waived the right to additional discovery. Opposition to the adversary's lists will not be accepted. If the court wants commentary it will ask for it.

The court will rule on whether the discovery sought will be allowed and will impose strict

---

[12]On the defendants' side, this list will presumably contain references to the discovery that is the subject of some or all of the seven potential motions listed in document [286]. The defendants may not make those motions at this time, but may include the discovery mentioned in those motions in their list.

deadlines for the completion of any permissible discovery.   If the plaintiffs wish to move for disqualification of Mr. Schwarz as counsel for Titon Industries, they should do so by separate motion.

Dated:  Central Islip, New York
       October 6, 2006

**SO ORDERED:**

s/s William D. Wall
WILLIAM D. WALL
United States Magistrate Judge