UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

FOX INDUSTRIES, INC.,

Plaintiff,

**OPINION AND ORDER
03 CV 5166 (SJF)(WDW)**

-against-

LEONID GUROVICH, et al.,

Defendants.

-------------------------------------------------------------------X

FEUERSTEIN, J.

I.     Introduction

Plaintiffs Fox Industries, Inc. ("Fox") and Charles E. Richardson ("Richardson")

(collectively "Plaintiffs") commenced this action against defendants Leonid Gurovich

("Gurovich"), Delta Balls, LLC ("Delta"), STR Industries, LLC ("STR"), John Does 1-100, and

XYZ Corps, alleging, *inter alia*, that Gurovich, Delta and STR misappropriated trade secrets and

breached a settlement agreement. Fox subsequently filed a Second Amended Complaint adding

defendants Cynthia Graceffo ("Graceffo") and Titon Industries, LLC ("Titon"). On December

30, 2008, this case was reassigned from Judge Thomas C. Platt to this Court. Defendant

Graceffo now moves for summary judgment dismissing the Second Amended Complaint as to

her and on her counterclaim for abuse of process pursuant to Rule 56 of the Federal Rules of

Civil Procedure. Plaintiffs[1] have cross-moved to dismiss Graceffo's counterclaim for abuse of

process pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). In

---

[1] Although Richardson is no longer a Plaintiff in this action because, by Order dated
March 8, 2007, the Court dismissed Richardson as a plaintiff, he, as well as Fox, are the subject
of Graceffo's preexisting counterclaim.

addition, Fox now moves for voluntary dismissal of the Second Amended Complaint without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure ("Rule 41(a)") and for attorney's fees and costs.

II.    Background

Fox is in the business of purchasing and selling "grinding media and burnishing media." (Second Am. Compl. ¶ 12.) "Grinding media consists of," *inter alia*, "steel balls, zirconium silicate, glass, zirconium oxide, [and] alumina," and is used in the creation of "inks, paints, foods and pharmaceuticals." (Id.) "Burnishing Media is media made from case hardened steel, stainless steel and other formulations widely used in vibratory equipment to produce burnished surfaces." (Id.)

Beginning in or about spring 1995, Gurovich was hired by Fox. In July 1995, Gurovich signed a confidentiality agreement (the "Confidentiality Agreement") that, *inter alia*, prohibited Gurovich from competing against Fox and from disclosing confidential information to third parties, including, *inter alia*, the identity of and transactions with Fox's customers and suppliers (collectively, the "Confidential Information"). On or about January 9, 2003, Gurovich resigned from Fox.

According to Fox, Gurovich formed Delta and Titon in or about January and February 2003, respectively, and utilized Fox's Confidential Information in an effort to create customer confusion and divert business from Fox.

On April 3, 2003, Fox and defendants Gurovich and Delta entered into a settlement agreement (the "Settlement Agreement"), which provided, *inter alia*, that: (1) Gurovich "[was to]

2

cause [Delta] and every other entity that he is affiliated with, owns, is employed by or has any interest in whatsoever, . . . that attempted to compete or did compete against Fox to be dissolved;" (2) "Gurovich agrees to hereafter strictly abide by the terms of [the confidentiality provision in the Confidentiality Agreement] and reconfirms his obligation to never disclose to any third party any portion or aspect of the Confidential Information . . .;" and (3) "[f]or a period beginning on the date hereof and ending on the forty-eighth (48th) month anniversary of the date of this Settlement Agreement (the "Restricted Period"), Gurovich agrees that he will not, directly or indirectly, either individually or through any corporation . . . perform any services for, solicit, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in any aspect of the Grinding Media business or the Burnishing Media business . . . ." (Settlement Agreement, ¶¶ 2.1-2.3.)

In October 2003, Fox commenced the instant action claiming that Gurovich, *inter alia*, violated the Settlement Agreement.

III. Discussion

    A. Motion to Dismiss

The standard of review on a motion made pursuant to Rule 12(b)(6) is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). A "formulaic recitation of the elements of a cause of

3

action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 550 U.S. 544, 127 S.Ct. at 1959, 167 L.Ed.2d 929. Accordingly, the applicable standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. Williams v. Berkshire Fin. Group, Inc., 491 F. Supp. 2d 320, 324 (E.D.N.Y. 2007).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). The Court must limit itself to the facts alleged in the complaint, which are accepted as true, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit. See Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).


B.     Abuse of Process

In order to establish a claim for abuse of process, a plaintiff must demonstrate that the defendant "'(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)). A plaintiff must

also allege and prove actual or special damages in order to recover. See, e.g., Jacques v. DiMarzio, Inc., 216 F. Supp. 2d 139, 142 (E.D.N.Y. 2002), aff'd, 386 F.3d 192 (2d Cir. 2004) (holding that a party must allege and prove actual or special damages in order to recover); Beezhold v. Allegiance Healthcare Corp., No. 99 Civ. 0299, 2000 WL 1092886, at * 3 (S.D.N.Y. Aug. 4, 2000) (accord); Board of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, Inc. Local 1889 AFT AFL-CIO, 38 N.Y.2d 397, 405, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975) (accord).

"[T]he process used must involve 'an unlawful interference with one's person or property,'" Curiano v. Suozzi, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324 (1984) (quoting Williams v. Williams, 23 N.Y.2d 592, 596, 298 N.Y.S.2d 473, 246 N.E.2d 333 (1969)), such as "attachment, execution, garnishment, or sequestration proceedings, or arrest of the person, or criminal prosecution, or even such infrequent cases as the use of a subpoena for the collection of a debt." Williams, 23 N.Y.2d at 596 n.1 (citation and quotation marks omitted). In addition, "'a malicious motive alone . . . does not give rise to a cause of action for abuse of process." Savino v. City of New York, 331 F.3d 63, 77 (2d Cir. 2003) (quoting Curiano, 63 N.Y.2d at 117). Rather, to establish a claim "for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action." Savino, 331 F.3d at 77 (citing Dean v. Kochendorfer, 237 N.Y. 384, 390, 143 N.E. 229, 231 (1924)); see also Webster City of New York, 333 F. Supp. 2d 184, 208 (S.D.N.Y. 2004) (stating that "[t]he gist of the action for abuse of process lies in the improper use of process after it is issued. To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough") (citing Dean, 237 N.Y. at 390).

Graceffo alleges, *inter alia*, that: (1) Plaintiffs "joined Graceffo, the wife of [Gurovich] as a defendant in this action without any lawful, valid excuse or justification and with the sole intent to cause her and the Gurovich family severe emotional anguish and distress;" (2) Plaintiffs "were well aware for many years that [Graceffo has] never been involved or played any role in any of [Gurovich's] business activities . . ." and that Plaintiffs "knew then, and know now, that [the allegations made in the Second Amended Complaint concerning Graceffo are] false;" (3) Plaintiffs "were also well aware that [Gurovich] occasionally used [Graceffo's e-mail] address instead of his own to sent [sic] e-mails and have several such e-mails in their possession," that "[t]his is a common occurrence among happily married couples," and that "[o]ne such e-mail alone,[2] without more, clearly does not provide any 'good faith' factual or legal basis to drag Gurovich's wife into Fox's suit against him;" (4) "Graceffo was not joined in this suit for any legitimate grounds but was done for an improper purpose and to achieve a collateral objective of inflicting emotional anguish and severe psychological pressure on defendants and causing them additional financial harm;" (5) "[t]he joining of Graceffo as a defendant was a perversion of regularly issued process" and (6) "as a direct and proximate result of [Plaintiffs'] actions, Graceffo has suffered and will continue to suffer damages." (Verified First Am. Answer to Second Am. Compl. ("Graceffo Answer"), Countercl. ¶¶ 1,3, 5-8.)

Even accepting Graceffo's allegations as true, she has failed to state a claim for abuse of process. Graceffo does not allege, *inter alia*, any set of facts indicating that any legal process

---

[2] Graceffo alleges that the Second Amended Complaint "indicates that [Plaintiffs] found one e-mail sent from Graceffo's e-mail address cindygraceffo@optonline.net on May 8, 2003 that 'made inquiries on behalf of Titon for the purchase of grinding media;' from Technocon Engineers in India." (Graceffo Answer Countercl. ¶ 4 (quoting Second Am. Compl. ¶ 43).)

was employed to compel performance or for forbearance of some act. See Williams, 23 N.Y.2d at 596 ("Process is a direction or demand that the person to whom it is directed shall perform or refrain from the doing of some described act," thus "there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie.") (citation and quotation marks omitted). Insofar as Graceffo alleges that the "regularly issued process" that was abused was Plaintiffs' filing of the Second Amended Complaint adding Graceffo as a defendant, "there was no unlawful interference with [Graceffo's] person[] or property because the institution of a civil action by summons and complaint is not legally considered process capable of being abused." Curiano, 63 N.Y.2d at 116-117 (citations omitted); see also PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J., 839 F.2d 42, 43 (2d Cir. 1988); Brown v. Brown, 343 F. Supp. 2d 195, 195 (E.D.N.Y. 2004). Graceffo's claim also fails because she does not sufficiently allege actual or special damages. See Brown, 343 F. Supp. 2d at 198; Jacques, 216 F. Supp. 2d at 142; Beezhold, 2000 WL 1092886, at * 3; Board of Educ. of Farmingdale, 38 N.Y.2d at 405.

Accordingly, Plaintiffs' motion to dismiss Graceffo's counterclaim for abuse of process is granted.[3]

C       Voluntary Dismissal

Absent "a stipulation of dismissal signed by all parties who have appeared" in an action, Fed. R. Civ. P. 41(a)(1)(ii), a federal action in which an answer has been filed may be voluntarily

---

[3] Because the Court grants Plaintiffs' motion to dismiss Graceffo's counterclaim for abuse of process, Graceffo's motion for summary judgment on this claim is denied as moot.

dismissed by a plaintiff "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Such dismissals are without prejudice "[u]nless the order states otherwise." Id. "[A] district judge may convert a dismissal sought to be entered without prejudice to one with prejudice . . ." if a plaintiff is afforded "an opportunity to withdraw his motion and proceed with the litigation." Gravatt v. Columbia Univ., 845 F.2d 54, 56 (2d Cir. 1988) (citations omitted). "If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2).

The following factors are relevant in determining whether to grant a voluntary dismissal without prejudice pursuant to Rule 41(a)(2): (1) the plaintiff's diligence in bringing the motion; (2) any "undue vexatiousness" on the plaintiff's part; (3) the extent to which the suit has progressed, including defendant's efforts and expense in preparation for trial; (4) the duplicative expense of relitigation; and (5) the adequacy of plaintiff's explanation for the need to dismiss. Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990) (citations omitted).

Fox asserts that a voluntary dismissal without prejudice is warranted in this case because, *inter alia*: (1) Fox sought Defendants' consent to a voluntary dismissal ten (10) days after the Court issued a Memorandum and Order, on June 2, 2008 ("June 2008 Memorandum and Order"), terminating the preliminary injunction;[4] (2) Defendants "claim that they have no financial means to satisfy any judgment entered against them;" (3) "although discovery . . . has been exchanged," defendants Gore and Graceffo "refused to appear for their depositions;" (4)

---

[4] In November 2003, the Court issued a Preliminary Injunction enjoining and restraining Defendants from, *inter alia*, performing any services in the grinding and burnishing media business, deleting records, and disclosing any confidential and proprietary information.

"[relitigation] is not a factor in light of the fact that Fox seeks voluntary dismissal of the entire remaining counts of the Second Amended Complaint;" and (5) "defendants and their counsel have relentlessly seized on collateral issues . . . causing plaintiffs to incur significant attorneys' fees and costs." (Fox's Mem. of Law in Supp. of the Mot. for Voluntary Dismissal, filed January 28, 2009, pp. 16-17.)

Defendants contend, however, that a voluntary dismissal with or without prejudice is not warranted here because, *inter alia*, (1) Fox brought its motion more than (6) months since the June 2008 Memorandum and Order terminating the preliminary injunction; (2) Graceffo has asserted a counterclaim and Defendants have a "proposed" counterclaim for "injunctive damages;" (3) Plaintiffs have delayed the litigation and caused Defendants "outrageous and exorbitant expenses;" and (4) an Order was entered, on June 2, 2008 ("June 2008 Order"), directing the Clerk of Court to enter judgments against Defendants at the request of Plaintiffs. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Voluntary Dismissal, filed January 28, 2009 ("Defs.' Mem."), pp. 8-10.)

Considering the Zagano factors, a voluntary dismissal in this case is warranted because, *inter alia*, (1) Fox was diligent in bringing the instant motion as Fox repeatedly sought Defendants' consent to a voluntary dismissal of the action (with or without prejudice) since the Court terminated the preliminary injunction on June 2, 2008; (2) there is no indication that Fox brought the instant motion to harass or annoy Defendants; (3) there is also no indication that the parties have expended efforts or expense in preparing for trial as there is no pre-trial order, no trial date has been set, and, while discovery is essentially complete, the depositions of defendants

Gurovich and Graceffo have not yet occurred;[5] (4) Defendants do not dispute that they are financially unable to satisfy any outstanding or potential judgments against them; and (5) the Restricted Period of the Settlement Agreement has ended.

In addition, although Defendants contend that Plaintiffs have delayed this litigation and caused Defendants great expense, the record indicates that any delay and concomitant expenses are attributable to Defendants. Indeed, Defendants' conduct has resulted in, *inter alia*, sanctions, a judgment of contempt against Gurovich, and a finding of abuse of process against Defendants' counsel. In addition, by Order dated March 8, 2007 ("March 2007 Order"), Judge Platt noted Defendants' "vexatious attempt to multiply the proceedings and obstruct [Plaintiffs'] attempts to obtain some remedies for the harms done to its business by [Defendants]," and "that the record in this case is replete with repeated violations of this Court's Orders by [Defendants] and their counsel." (March 2007 Order, Docket No. 333, pp. 2 n.1, 4 n.4.) Defendants' claim that they were "greeted with a barrage of frivolous motions" by Plaintiffs is belied by the fact that, as Defendants concede, "virtually all [Plaintiffs'] motions and cross-motions were granted by [Magistrate Judge Wall]."[6] (Defs.' Mem. p. 8-9.)

Defendants' contention that the June 2008 Memorandum and Order authorizing the Clerk of Court to enter Orders dated September 1, 2005, September 21, 2005, and October 6, 2006 as judgements against Defendants and their counsel for, *inter alia*, attorney fees, costs and

---

[5] Although United States Magistrate Judge William D. Wall ordered the depositions of Gurovich and Graceffo to occur on or before April 18, 2008, the time was extended by Orders dated April 8, 2008 and April 29, 2008.

[6] Defendants, however, assert that Magistrate Judge Wall issued "inexplicable, one-sided, arbitrary and capricious rulings . . ." (Defs.' Mem. pp. 8-9.)

sanctions, should weigh against voluntary dismissal is also unpersuasive. Specifically, Defendants contend that "Plaintiffs simply could not reasonably have expected to receive a consent dismissal by stipulation given that they decided at the last minute to move to convert long standing orders into money judgments totaling nearly $ 80,000.00." (Id. at 10.) The Orders were issued based upon misconduct and abuse of process by Defendants and their counsel. The entry of these Orders as judgments has no bearing on the instant motion for voluntary dismissal.

Insofar as Defendants oppose dismissal based upon a pending counterclaim, the argument is moot since Graceffo's counterclaim for abuse of process is dismissed above. In addition, Defendants' assertion that they have a "proposed" counterclaim for injunctive damages is not a bar to granting a motion for voluntary dismissal. See Fed. R. Civ. P. 41(a)(2) ("If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.") (emphasis added).

Although a voluntary dismissal is warranted in this case pursuant to Rule 41(a)(2), the dismissal must be with prejudice. This case was commenced on or about October 14, 2003, over five (5) years ago, and the parties have engaged in extensive motion practice and have incurred years of litigation expenses. Although the parties will not be prejudiced by a voluntary dismissal with prejudice at this stage of the litigation sufficient to warrant the denial of the dismissal, any further delay in litigating this case may create such prejudice to the parties. Moreover, Fox only filed the instant motion because Defendants would not stipulate to dismissal with prejudice. Therefore, Fox shall show cause on or before February 27, 2009 as to why the dismissal should not be with prejudice, in order to provide Fox "an opportunity to withdraw its motion and

11

proceed with the litigation." Gravatt, 845 F.2d at 56. Failure of Fox to timely file the Order to Show Cause will be deemed consent to a voluntary dismissal with prejudice.

Fox's motion seeking attorney's fees and costs based upon, *inter alia*, Defendants refusal to consent to a voluntary dismissal, is denied. Defendants are not required to consent to a voluntary dismissal. See e.g., Fed. R. Civ. P. 41(a)(2); see also Colombrito v. Kelly, 764 F.2d 122, 133 (2d Cir. 1985) (stating that "[f]ee awards are often made when a plaintiff dismisses a suit without prejudice . . ." as "[t]he purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him") (citations omitted).

IV.    Conclusion

The cross-motion of Plaintiffs to dismiss the counterclaim of Graceffo is granted, and the motion of Fox for voluntary dismissal is denied to the extent that it seeks attorney's fees and costs. Graceffo's motion for summary judgment is stayed pending determination of an Order to Show Cause to be served by Fox on or before February 27, 2009 as to why Fox's motion should not be granted with prejudice. Failure to timely file the Order to Show Cause will be deemed consent to a voluntary dismissal with prejudice.

**SO ORDERED.**

_____
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
       February 17, 2009